Downs *v.* Maryland Casualty Co.

5-1735

Opinion delivered February 16, 1959.

*McKay, Anderson & Crumpler,* for appellant.

*S. Hubert Mayes,* for appellee.

JIM JOHNSON, Associate Justice. This matter is before the Court on appeal from the Columbia Circuit Court from an action in which the plaintiffs below sought a declaratory judgment to determine the obligations of two insurance companies, under their liability policies, and to require one or the other, or both, to defend a damage suit within the limits of either of said policies.

The cause was heard before the judge, sitting as a jury, under Section 34-2501, *et seq.* of the Ark. Stats., known as the "Uniform Declaratory Judgment Act."

By stipulation of counsel for all parties, there were introduced into evidence the liability policies of both insurance companies.[1]

---

[1] *Maryland Casualty Company* issued to J. P. Downs, d/b/a Downs Service and Supply Company, its Comprehensive Liability Policy (Automobile and General Liability) with limits under Coverage A—Bodily Injury Liability of $100,000.00 for each person and $300,000.00 for each accident, covering among other automobiles, trucks, and motor driven

In 1948, J. P. Downs purchased a Hobbs 1948 semitrailer, and in 1953 he purchased a 1953 Dodge truck, 2½ ton tractor. He used them in his own business until about June 1955, when he turned them over to his brother, W. F. Downs. Since June 1955, W. F. Downs has had continuous possession of this truck and trailer and has used them in his business except on one or two occasions. For two or three days at a time, J. P. Downs took the truck and trailer and used them with his own drivers in his own business.

On November 24, 1956, J. C. Martin, an employee of W. F. Downs, was driving this truck and trailer in El Dorado, Arkansas in connection with W. F. Downs' business and was involved in an accident with an automobile owned by V. V. Meeks and then driven by Ann Dean, daughter of V. V. Meeks. That accident is the basis of a personal injury action by Ann

equipment, a truck described as one 1953 Model Dodge 2½ ton with one 1958 Model Hobbs Semi-trailer, as a truck and trailer owned by J. P. Downs, d/b/a Downs Service and Supply Company and involved in the accident hereinabove mentioned, agreeing:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

The "omnibus" clause of this policy also includes as the insured thereunder "any person while using an owned automobile or a hired automobile and any person or organization responsible for the use thereof provided the actual use of the automobile is by the named insured or with his permission."

*United States Fidelity and Guaranty Company* issued to W. F. Downs, d/b/a W. F. Downs Oil Well Service its Comprehensive Liability Policy with limits under Coverage A—Bodily Injury Liability of $100,000.00 for each person and $300,000.00 for each accident, covering among other automobiles, trucks and motor driven equipment listed in said policy "any automobile used under contract in behalf of, or loaned to the named insured provided said automobile is not owned by or registered in the name of (A) the named insured, or (B) an executive officer thereof, or (C) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile", and agreeing,

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."
and also covering,

"Hired automobiles, if any, and non-owned automobiles, if any, provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Dean against W. F. Downs and J. C. Martin, filed in the Circuit Court of Union County.

This present action was brought by the plaintiffs below to determine which insurer should defend W. F. Downs and J. C. Martin against the action brought by Ann Dean. The plaintiffs in their complaint allege that Maryland's policy issued to J. P. Downs specifically describes the truck and trailer involved in the accident as covered by it; and that U. S. F. & G.'s. policy, issued to W. F. Downs, while not specifically describing that truck and trailer as covered by it, nevertheless covers them as a "Hired Automobile."

U. S. F. & G. denies liability on the ground that the truck and trailer are not included in its policy and that the insurance coverage therein provided does not apply to them and further that if J. P. Downs (Maryland's Named Insured) was the owner of that truck and trailer at the time of the accident, U. S. F. & G.'s. only liability is that of excess insurance after all damages, costs and expenses, within the limits of Maryland's policy, have been paid by Maryland.

Maryland denies liability on the ground that the truck and trailer, at the time of the accident, were not owned by J. P. Downs, but by W. F. Downs.

The facts concerning the purchase and use of the truck and trailer by J. P. Downs and his transfer of them to W. F. Downs and the latter's use of them are pertinent to show whether J. P. Downs or W. F. Downs was the owner of the truck and trailer at the time of the accident and hence which of the insurance policies, if either, covered them and that accident.

The trial court held that the insurance policy issued by U. S. F. & G. to W. F. Downs covers the accident which is the basis of the damage suit filed by Ann Dean. The court further held that the insurance policy issued by Maryland Casualty Company to J. P. Downs does not cover the accident.

From this declaratory judgment, U. S. F. & G. appeals and both the Plaintiffs, J. P. Downs and W. F.

Downs, also appeal "insofar as said judgment holds that the policy issued by Maryland Casualty Company to J. P. Downs, d/b/a Downs Service and Supply Company does not cover the truck and accident."

The grounds urged by Appellant, U. S. F. & G., for reversal are:

1. Trial court erred in holding U. S. F. & G's. policy covered accident and truck and that Maryland's policy did not cover them.

(a) If W. F. Downs was the owner, neither policy provides coverage.

(b) If J. P. Downs was the owner, Maryland's policy provides primary coverage under its "omnibus" clause and U. S. F. & G's. policy provides excess coverage only.

The grounds urged by Cross-Appellants, J. P. Downs and W. F. Downs, for reversal, are:

1. J. P. Downs was the owner of the automobile (truck) at the time of the collision.

2. The policy issued by Cross-Appellee, Maryland Casualty Company, covered the automobile (truck) under the "omnibus" clause.

The testimony and exhibits reflect that the truck and trailer here involved were purchased by J. P. Downs; he had them entered as assets on his books of account and in each year thereafter charged off as expenses in his own business the depreciation of each — finally completely depreciating the trailer in 1956 and the truck in 1957; he listed them for taxes in each year and paid the taxes on them; he registered them in his business name with the Motor Vehicle Division of the Department of Revenues and obtained a certificate of title (in his business name as owner subject to lien in favor of First National Bank of Magnolia) which is still in the possession of his mortgagee, First National Bank of Magnolia; each year he paid the license fees and obtained Registration Certificates also in his

business name; he obtained and has continuously maintained in his own name, as the Named Insured, comprehensive liability insurance with Maryland specifically covering this truck and trailer as owned by him and has paid the premiums each year on the policies and also on upset, collision, etc., insurance with the Firemen's Insurance Company of North New Jersey.

About June of 1955, J. P. Downs turned this truck and trailer over to his brother, W. F. Downs, saying, "Well, just go ahead and take it and we will settle for it after I get it out from under the mortgage." In response to the above, W. F. Downs testified — "If he (J. P. Downs) didn't need the truck any more I would buy it from him." Thereafter, W. F. Downs has had possession and control of the truck and trailer except on one or two occasions when J. P. Downs took them for two or three days at a time. No money was paid by W. F. Downs to J. P. Downs and there was no agreement, either oral or in writing, about price or payment. J. P. Downs, moreover, continued to carry the truck and trailer on his books as assets; continued to charge off their depreciation in each succeeding year; continued to assess them and pay the taxes on them; continued to maintain them registered in his own business name and to pay the license fees; and, continued to report them as owned by himself to his insurance carrier and to pay the policy premiums each year. He never reported to Maryland's agents that he turned the truck and trailer over to his brother, W. F. Downs. On one occasion, when J. P. Downs took the truck and trailer back and was using it in his own business, they were upset while being driven by one of his own drivers, and he reported that accident to his insurance carrier (Firemen's Insurance Company) although there was nothing payable under his policy because the damages were less than the $100.00 deductible. When the accident herein involved occurred on November 24, 1956, he reported it on November 26, 1956, to Maryland's agents immediately after hearing of it from W. F. Downs' employees.

W. F. Downs has never paid any taxes on the truck or trailer; never bought any licenses for them; never listed them with his insurance carrier; never notified the carrier that he had them in his possession; never paid U. S. F. & G. any premium on this truck and trailer although he has renewed the policy (taken out originally in 1948) several times after he got the truck and trailer; never had the truck and trailer recorded in his office as owned by him; and never charged off any depreciation on them in any of his financial statements. W. F. Downs did not report the accident of November 24, 1956, to U. S. F. & G., but one of his employees did notify his brother, J. P. Downs, of the accident on November 26, 1956, knowing that he would report it to his own insurance carrier.

Even if this transaction could be considered an executory contract to sell, the contract is so vague and lacking in the required elements that it could not be enforced by either party against the other without further agreement on their part.

The Uniform Sales Act is in force in Arkansas (Act 428 of 1941-Ark. Stats., Sec. 68-1401 *et seq*). Section 1 of that Act is as follows:

''(1) A contract to sell goods is a contract whereby the seller agrees to transfer the property in goods to the buyer for a consideration called the price.

''(2) A sale of goods is an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price.

''(3) A contract to sell or a sale may be absolute or conditional.

''(4) There may be a contract to sell or sale between one part owner and another.''

In our opinion this transaction was not a sale as defined in that Act—there was no present transfer and there was not intended to be any present transfer of the title or property in the truck and trailer

and, moreover, J. P. Downs could at any time take back the truck and trailer without any recourse by W. F. Downs. As a contract to sell, the transaction lacks the essential provision of agreed price and time of payment, even if it be conceded that the transaction was to be consummated when J. P. Downs had paid his mortgage indebtedness at the bank and secured the release of his lien (a thing he had not done at the time of the trial—nearly three years after the transaction). The courts have often held that such a transaction, lacking those essentials is no sale and is unenforceable as a contract to sell. See: *Biggers* v. *Johnson,* 106 Ark. 89, 152 S. W. 291.

We point out that the trial judge made no specific finding as to whether or not there was a sale of the truck.

Since J. P. Downs was the owner of the truck and trailer; and since they were being used by W. F. Downs and his employees with the permission of J. P. Downs, it follows that the Maryland Casualty Company, under its "omnibus" clause, heretofore set out in footnote, is liable (within the limits of its policy) for any damages which may be awarded to Ann Dean.

U. S. F. & G. admits that if J. P. Downs was in fact the owner and W. F. Downs at the time of the accident was using it as a non-owned automobile (truck) then its policy insures W. F. Downs and his employee, J. C. Martin, but only as excess insurance after all damages, costs and expenses, within the limits of its policy, have been paid by Maryland. It, therefore, must follow from what we have already said, that U. S. F. & G. is liable to the extent indicated above.

Reversed on appeal and cross-appeal.

Mr. Justice GEORGE ROSE SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. The appellant, in a contention that the majority find it unnecessary to consider, insists that it is not liable if W. F. Downs was the owner of the truck-trailer. I regard this contention as

unsound. The policy insured Downs against loss caused by accident and arising out of the ownership of any automobile, which is defined as a land motor vehicle or trailer. It is also provided that the original premium is an estimate only, that the earned premium will be determined after the expiration of the policy year, and that to determine the premium the insurer may examine the insured's books within three years after the termination of the policy.

I find no requirement that a vehicle must be listed in the policy to be covered. The only suggestion of this kind is in an endorsement, which reads in part: "This endorsement supplements the 'Declarations' of the policy and contains a correct description of the automobiles to be covered. The insurance afforded is only with respect to such and so many of the coverages as are indicated by specific premium charge or charges." It seems plain from the contract as a whole that the restriction "to such and so many of the coverages" refers not to the vehicles described but to the various available coverages for bodily injury and property damage, and the rest of the endorsement confirms this view beyond any doubt.

I disagree with the majority for the reason that I think there is substantial evidence to justify a finding by the trial court that J. P. Downs sold the truck-trailer to his brother. J. P. testified more than once that he intended to sell the vehicle to his brother in June, 1955. For example: "Well, actually, I sold it to him then, with the understanding that as soon as it could be cleared, why, then I would give him the title to it." W. F. Downs testified that he bought the truck-trailer "conditionally," the condition being that the title certificate would be turned over to him when the mortgage was paid. After the transfer W. F. had almost continuous possession of the vehicle, painted his business name on it, used it as he liked, paid the costs of operation, kept it in repair, bought new tires for it, replaced its wheels, etc. To every outward appearance it became W. F.'s property.

The Sales Act provides that the property in the goods is transferred to the buyer "at such time as the parties to

the contract intend it to be transferred." Ark. Stats., 1947, § 68-1418. "The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed. . . . Where the price is not determined in accordance with the foregoing provisions the buyer must pay a reasonable price." § 68-1409.

That the transaction was loosely handled is understandable, since the buyer and seller were brothers. Doubtless they suffered from a misapprehension common to laymen, that the certificate of title *is* the title, and for that reason the final settlement was left to the future. But there is an abundance of evidence to show that they intended for the property in the vehicle to pass to W. F., and I think that should conclude our inquiry in reviewing a decision of the circuit court.